IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HENRY J. SCHAPPERT,<br>Defendant. | Case No. 4:25-cr-125<br>**DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF DOWNWARD VARIANCE** |

## I. INTRODUCTION

Defendant Henry J. Schappert faces sentencing after pleading guilty to making a false statement on a loan application, in violation of 18 U.S.C. § 1014 (count two), and making a false declaration during bankruptcy proceedings, in violation of 18 U.S.C. § 152(3) (count three). The government agreed to dismiss count one at sentencing. Mr. Schappert agreed that the Court should impose an order of restitution for all relevant conduct. The primary issue for the Court to resolve at sentencing is the appropriate sentence to impose. Mr. Schappert asks the Court to consider this sentencing memorandum and brief in support of a downward variance in connection with his sentencing.

## II. ISSUES

By statute, count two carries a maximum term of thirty years' imprisonment, a term of supervised release of up to five years, and a maximum fine of $1,000,000. Count three carries up to five years of imprisonment, a maximum of three years' supervised

release,[1] and a fine of up to $250,000. Neither count carries a mandatory minimum prison term. The Court must impose a $100 special assessment for each count. Finally, Mr. Schappert agreed the Court should impose an order of restitution for all relevant conduct. He does not object to the government's request for $265,567 in restitution.

The advisory guideline range is not in dispute. Under USSG § 2B1.1(a), the base offense level is 7. A 14-level enhancement applies under USSG § 2B1.1(b)(1)(H) because the amount of loss involved in the offense was $558,030.05.[2] PSR ¶¶ 40, 41. Mr. Schappert also receives a 2-level enhancement under USSG §2B1.1(b)(9(B) because the offense involved a misrepresentation during a bankruptcy proceeding, and a 2-level enhancement under USSG § 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040 (fraud in connection with disaster/emergency benefits). After a 3-level reduction for acceptance of responsibility, and a 2-level reduction because Mr. Schappert is a zero-point offender under USSG § 4C1.1(a), the total offense level is 20. With a criminal history category I based on zero points, the advisory guidelines recommend a sentence of 33 to 41 months' imprisonment. Mr. Schappert will ask the Court to vary downward from that range for the reasons discussed below.

## III. WITNESSES AND EXHIBITS

Mr. Schappert does not anticipate calling any witnesses at the sentencing hearing. He plans to offer the following exhibits:

| | |
|---|---|
| **Exhibit A** | Letter of Support from Temeshia Bomato |

[1] If the Court imposes a term of supervised release on each count, those terms must run concurrent to one another. 18 U.S.C. § 3642(e).

[2] As discussed further below, Mr. Schappert will ask the Court to vary downward to reflect the forthcoming inflationary adjustment amendment to the Guidelines.

| | |
|---|---|
| **Exhibit B** | Letter of Support from Jose Mendez |
| **Exhibit C** | Letter of Support from Travis Ramsey |
| **Exhibit D** | Letter of Support from Richardt Schappert |
| **Exhibit E** | Letter of Support from Jonathan Schappert |
| **Exhibit F** | Letter of Support from Shawn Montgomery |
| **Exhibit G** | Letter of Support from Robert Tackitt |
| **Exhibit H** | Letter of Support from Jodie Howard |
| **Exhibit I** | Letter of Support from Christina Davis |
| **Exhibit J** | Letter of Support from Kris Clark |
| **Exhibit K** | Letter of Support from Elizabeth Arnold |
| **Exhibit L** | Letter of Support from Anthony Davis |
| **Exhibit M** | Family Photographs |

## IV. ARGUMENT

A. The § 3553(a) Factors Support a Sentence Below the Advisory Guideline Range.

The guidelines are only one of many factors a court must consider in fashioning an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Sentencing Reform Act instructs courts "to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Id.* at 101 (quoting 18 U.S.C. § 3553(a)). To that end, Mr. Schappert asks the Court to consider the following factors in deciding on

a sentence.

Mr. Schappert, like many others, faced great economic uncertainty when coronavirus began to spread across the country in 2020. With cancelled contracts and supply chain disruptions, the roofing business Mr. Schappert had spent years building quickly withered away. He depleted his savings to stay afloat, and when that ran out, he grew desperate. Mr. Schappert and his wife had dreamt of starting a business that would not only support their family, but would also allow Mr. Schappert a respite from the grueling manual labor that had taken a toll on him throughout life. So, in an exercise of incredibly poor judgment, Mr. Schappert made false statements on a loan application, then used the proceeds of that loan to open Pots and Shots, a plant shop combined with a cocktail bar. The business failed not long after its inception, and Mr. Schappert was swimming in so much debt that he felt he had no choice but to file for bankruptcy. In the course of that proceeding, Mr. Schappert made false statements in an effort to conceal his earlier misdeeds.

Although his crimes were not violent, Mr. Schappert recognizes that making false statements on loan applications more than five years ago was a serious crime, and that the severity of his conduct is exacerbated by the more recent false statements he made in connection with his bankruptcy proceedings in 2024. One bad decision led to another, and the bad decisions compounded as Mr. Schappert tried to fix the situation and prevent his family from suffering the consequences of his actions. On the mitigating side, Mr. Schappert was not acting out of malice or greed. Mr. Schappert understands that his choices have led his family to face a hardship far greater than any financial challenge—the possibility of his absence. Mr. Schappert accepts full responsibility for his crimes.

In evaluating the nature and circumstances of the offense, the Court should also consider the forthcoming amendment to loss amounts in USSG § 2B21.1, an amendment intended to adjust for inflationary changes (effective November 1, 2026). Mr. Schappert's offense involved $558,030.05 in loss. PSR ¶¶ 40, 41. If Mr. Schappert's sentencing hearing were one month later, he would receive a 12-level enhancement under USSG § 2B1.1(b)(1)(G) because the amount of loss exceeds $350,000 but is less than $750,000; rather than a 14-level enhancement based on loss in excess of $550,000. U.S. Sentencing Comm'n, *Amendments to the Sentencing Guidelines* § 2B1.1(b)(1), pp. 13–14 (effective Nov. 1, 2026), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202605_Amendments.pdf. With this change, the total offense level would be 18, and correspondingly, the advisory guidelines would recommend a range of 27 to 33 months' imprisonment. The Court should consider this forthcoming amendment and look to the adjusted range as the starting point for a downward variance.

Mr. Schappert's history and characteristics are mitigating. Mr. Schappert, now fifty-eight years old, was born in Des Moines, Iowa, to married parents. His parents both struggled with health problems that made it difficult for them to actively engage with Mr. Schappert. PSR ¶ 71. Both parents drank alcohol daily, and Mr. Schappert occasionally witnessed domestic violence in the home. PSR ¶¶ 71, 75–76. Mr. Schappert's parents were unusually overprotective, thus Mr. Schappert struggled to make friends and had a sheltered childhood. PSR ¶ 71. Mr. Schappert often felt isolated and began acting out to get his parents' attention, which led to punishment in the form of physical abuse. PSR ¶ 71.

Notwithstanding the difficulties at home, Mr. Schappert graduated from East High School in Des Moines, then went on to attend Iowa State University. PSR ¶ 97, 98. In 1994, he earned a bachelor's degree in art and design. PSR ¶ 98. Prior to his thirties, Mr. Schappert's substance use history consisted primarily of youthful experimentation, though he used marijuana heavily throughout college. PSR ¶¶ 90–93. In his early thirties, Mr. Schappert was introduced to methamphetamine and quickly developed a daunting addiction. PSR ¶ 94. Mr. Schappert's methamphetamine addiction led to his first meaningful encounters with the criminal justice system, *see* PSR ¶ 63–65, 67, and reached a crescendo in 2001 when he was sentenced to ten years in prison for possessing methamphetamine with intent to deliver. PSR ¶ 64.

Through dedication, resilience, and treatment, Mr. Schappert was able to overcome his addiction. In 2003, he was released from prison after serving just two years and was determined to turn his life around. He started his own roofing company in 2005, PSR ¶ 105, and rebuilt his life from the ground up. Since his 2003 release, he has entirely abstained from methamphetamine use and had no other involvement with the criminal justice system until the instant offense.

In 2019, Mr. Schappert began a relationship with Temeshia Bomato. At the time, Ms. Bomato had three daughters from a prior relationship. PSR ¶ 79. Mr. Schappert quickly and happily assumed the stepfather role, treating his wife's children as his own. *See, e.g.*, Exs. A & B. Mr. Schappert's relationship with Ms. Bomato was not the first time he took on being a parent in a blended family despite all of the associated challenges and complexities—although his first marriage did not work out, Mr. Schappert's stepson, Travis Ramsey, highlights the important role Mr. Schappert played and continues to play

in his life, and now in the lives of his step-grandchildren. Ex. C. Mr. Schappert's stepson describes Mr. Schappert as someone he could always depend on, and someone whose love knows no bounds: "He has never made a distinction between his biological children and the children he chose to love and raise. He has treated us all as his kids." Ex. C. The letter of support submitted by Jose Mendez, Mr. Schappert's wife's ex-husband, similarly illuminates Mr. Schappert's character—amid Ms. Bomato and Mr. Mendez's tumultuous divorce (*see* Ex. A), Mr. Schappert has worked to maintain a good relationship with Mr. Mendez and has been a consistent, positive, and trustworthy figure in the lives of his stepdaughters. Ex. B.

Mr. Schappert's family continued to grow when he and his wife welcomed their son, T.S., in 2022. Mr. Schappert has thrived in fatherhood and shares a close bond with T.S., describing T.S. as "his world." PSR ¶ 73. The prevailing theme of the letters of support offered on Mr. Schappert's behalf is Mr. Schappert's nature as a generous and loving family man, a dedicated father, and his general good character. Exs. A–L. Mr. Schappert's family and friends describe him as reliable, patient, thoughtful, selfless, and caring. They know Mr. Schappert as someone who takes responsibility for his actions. The many letters of support written by family, friends, and colleagues describe the profound impact Mr. Schappert's absence would have on their lives. They show Mr. Schappert's true character. He is a good person who would not intentionally harm anyone. He is worthy of mercy.

Based on his individual circumstances, the significant impact a term of incarceration would have on Mr. Schappert and his family suggests that a prison sentence is unnecessary to deter him from future criminal conduct. Additionally, data show that

an offender with Mr. Schappert's profile is unlikely to reoffend. Predictably, his lack of recent criminal history bodes well. A Sentencing Commission study published in 2021 "demonstrated notably lower rearrest rates among offenders in [criminal history category] I" compared to those in higher criminal history categories. U.S. Sentencing Commission, *Recidivism of Federal Offenders Released in 2010* at 27 (Sept. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf.

At fifty-eight years old, Mr. Schappert's age likewise makes recidivism unlikely, particularly when combined with his lack of criminal history. As shown in the table below, individuals in criminal history category I between 50 and 59 years old and over 60 years old at the time of release pose the lowest risk of reoffending among all federal offenders. *Id.* at 30.

Table 4. Rearrest Rates by Age at Release and Criminal History Category
*Federal Offenders Released in 2010*

| | CRIMINAL HISTORY CATEGORY (CHC) | | | | | | |
|---|---|---|---|---|---|---|---|
| AGE | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | TOTAL |
| Younger than 21 | 66.6% | 84.1% | 90.7% | 100.0% | 100.0% | 100.0% | 72.5% |
| 21 - 29 | 48.5% | 66.9% | 79.1% | 85.4% | 86.4% | 89.9% | 64.4% |
| 30 - 39 | 31.2% | 49.6% | 61.3% | 71.4% | 77.3% | 81.1% | 54.1% |
| 40 - 49 | 22.3% | 41.6% | 50.9% | 62.9% | 67.4% | 73.1% | 42.7% |
| 50 - 59 | 15.0% | 30.8% | 46.4% | 48.6% | 61.7% | 65.3% | 30.8% |
| 60 and Older | 9.4% | 18.2% | 28.1% | 30.0% | 48.6% | 46.9% | 15.9% |
| TOTAL | 30.2% | 49.4% | 61.9% | 70.3% | 75.4% | 76.2% | |

Finally, the same study found that individuals sentenced for fraud offenses are less likely to be rearrested than individuals who were originally sentenced for other types of offenses. *Id.* at 32. The Court should consider Mr. Schappert's low recidivism risk in

determining the appropriate sentence.

The Court should also not discount the ability of a term of supervision to advance the § 3553(a) factors. *See United States v. Coughlin*, No. 06-20005, 2008 WL 313099, at *10 (W.D. Ark. Feb. 1, 2008) (concluding "punishment [can be] achieved by probation, home detention, and community service"). A supervisory sentence subjects an offender "to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007) (citing *United States v. Knights*, 534 U.S. 112, 119 (2001)). "Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Id.* (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987))). As the *Gall* Court noted, "[p]robationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual 'special conditions' imposed by the court." *Id.* at 48–49 & 48 n.4. Whether the Court imposes a term of supervision in lieu of or following a term of incarceration, the restrictions accompanying that supervision will continue to advance the goals of sentencing.

Additionally, the Court should consider the harmful effects that will result from incarceration in comparison to any potential benefits. Mr. Schappert is sober, employed, has a strong familial support system and ties to the community, and poses no risk of violence. "The experience of incarceration will remove [him] from [his] famil[y] and communit[y] and whatever ties [he] may retain to the non-criminal world." *United*

*States v. Bannister*, 786 F. Supp. 2d 617, 658–59 (E.D.N.Y. 2011). He is low-risk for reoffending.

> Among low-risk offenders, those who spent less time in prison were 4% less likely to recidivate than low-risk offenders who served longer sentences. Thus, when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism.

*Id.* (quoting Valerie Wright, Sentencing Project, *Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment* 7 (2010), https://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf). A term of imprisonment will deteriorate Mr. Schappert's familial relationships—"Because prisons are often located in rural areas, and because convicts' families and friends have limited ability to travel, convicts' relationships with people on the outside—the people most likely to motivate convicts to lead straight lives—may be eroded seriously during long terms of imprisonment." *Id.* at 659. And the negative effects of incarceration on the children of incarcerated parents are well-documented. *See, e.g.*, Annie E. Casey Found, *A Shared Sentence: The Devastating Toll of Parental Incarceration on Kids, Families and Communities* 1–7 (2016), *available at* https://www.aecf.org/resources/a-shared-sentence ("Having a parent incarcerated is a stressful, traumatic experience of the same magnitude as abuse, domestic violence and divorce, with a potentially lasting negative impact on a child's well-being."). Mr. Schappert knows that his own choices led to the risk of being separated from his young son and stepdaughters. Each day he grapples with the reality that he may miss many

major milestones in their lives as a consequence of his actions. For that, no one is more disappointed in him than himself. His children are his prime motivation to stay on the right path moving forward.

Mr. Schappert's conduct in the ten-plus months he's been on pretrial supervision is telling—throughout this time, Mr. Schappert has not incurred a single violation of his conditions of release. He has maintained fulltime employment and has dedicated all of his free time to his family and his community. In the future, he plans to continue along this trajectory. More than anything, Mr. Schappert wants to be a present and positive role model for his young children. Mr. Schappert remains hopeful that he can continue to grow and learn from this experience.

## V. CONCLUSION

For the foregoing reasons, Mr. Schappert respectfully submits that a sentence below the advisory guideline range is sufficient, but not greater than necessary, under 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ *Mackenzi J. Nash*

Mackenzi J. Nash, Asst. Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: mackenzi_nash@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

_/s/ Mackenzi J. Nash_